UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAGUSA CORPORATION and | : | |
| E. BOSWORTH GRIER, JR., | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | 3:12-cv-01609-WWE |
| | : | |
| STANDARD FIRE INSURANCE COMPANY, | : | |
|     Defendant. | : | |
| | : | |

**MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

    Plaintiffs Ragusa Corporation and E. Bosworth Grier, Jr. filed this action against

defendant Standard Fire Insurance Company, alleging breach of contract, negligent

misrepresentation, breach of the implied covenant of good faith and fair dealing, and violation of

Connecticut General Statute Section 42-110g.  Defendant has moved to dismiss the entire

complaint.  For the following reasons, defendant's motion will be denied.

**BACKGROUND**

    For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the

complaint as true.

    This case involves a disputed flood insurance policy issued to plaintiffs by defendant.  On

or about August 28, 2011, and within the flood policy's effective period, plaintiffs' house

suffered significant damage directly caused by flood associated with Hurricane Irene.  Plaintiffs

submitted a claim for an amount within the limit of the flood policy, a proof of loss, and other

documentation to defendant regarding the flood damage sustained to the house.  Defendant

asserted that it owed the insured only $35,216.76, an amount well below what plaintiffs were

owed under the policy, sent a check to plaintiffs for such amount, and denied any obligation to

pay the full amount owed.  Plaintiffs returned the check to defendant and repeatedly demanded full payment for their losses.

Prior to plaintiffs' submission of its proof of loss and other documentation to defendant and prior to any deadline regarding the submission of such proof of loss and other documentation, defendant stated to plaintiffs that to the extent plaintiffs did not meet any such deadline, coverage would not be barred or limited for plaintiffs' claim under the flood policy, or words to that effect.  Subsequent to plaintiffs' submission of its proof of loss and other documentation to defendant and prior to the commencement of this action, defendant stated to plaintiffs that it would continue to consider additional payment to them for their claim, without any mention of failure to meet any deadline regarding submission of its proof of loss and other documentation.

After the hurricane, defendant retained an outside insurance adjuster to investigate the flood damage to the house and to make a recommendation as to the amount that plaintiffs should be paid.  Defendant also hired an engineer to assess structural damage to the house.  The engineer prepared a report that defendant's adjuster relied upon in making recommendations to defendant. Plaintiff requested and demanded a copy of the report, but defendant refused to provide it unless plaintiffs would sign an agreement whereby plaintiffs would not be allowed to use information contained in the report against defendant in any dispute regarding the claim.  Defendant further stated that requiring insureds to sign such agreements was defendant's general business practice and corporate policy, or words to that effect.

On or about March 8, 2012, and subsequent to plaintiffs' submission of their claim, proof of loss and other documentation, defendant sent a letter to plaintiffs advising them that the claim

was in the process of being concluded.  Plaintiffs subsequently received the check from defendant in the amount of $35,216.76.  Plaintiffs returned the check to defendant.

Some time after plaintiff received the check, the engineers' report arrived at plaintiffs' house without explanation as to why it was then being provided.

On April 10, 2012, defendant sent a letter to plaintiffs wherein defendant denied any obligation to pay any amount greater than $35,216.76.  This denial was based entirely on recommendations made by defendant's insurance adjuster and the engineers' report.

Plaintiffs demanded appraisal of the property because they did not agree on the amount to be paid under the flood policy, including disagreement about the amount owed for items that both sides agree were covered under the policy.  Defendant denied such demand for appraisal despite the clear requirement to submit to appraisal under the flood policy.

Count I of plaintiffs' complaint alleges breach of contract for failure to pay the full amount owed under the flood policy.  Count II alleges breach of contract for failure to submit to appraisal.  Count III alleges negligent misrepresentation to the extent that plaintiffs did not meet any deadline for submission of their proof of loss and other documentation based upon defendant's representations to plaintiffs that missing such deadlines would not bar recovery. Count IV alleges breach of the implied covenant of good faith and fair dealing.  Count V alleges unfair and deceptive acts or practices in the conduct of trade or commerce in violation of C.G.S. § 42-110b, as well as unfair or deceptive practices in the business of insurance in violation of C.G.S. § 38a-815.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader.  Hishon v. King, 467 U.S. 69, 73 (1984).  The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).   A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### Count I - Breach of Contract - Failure to Pay Full Amount Owed

Defendant argues that Count I should be dismissed because plaintiffs have failed to fulfill the requirements of the flood insurance policy.  Specifically, defendant contends that plaintiffs failed to submit a *timely* proof of loss for the alleged damage at issue.  To support this position, defendant submitted as an exhibit a FEMA memorandum that notified insurers of proof of loss deadline extension for victims of Hurricane Irene.  The memo states:

> Under the SFIP[1], the NFIP[2] policyholder who incurred a flood loss on August 26, 2011, was required to send the proof of loss to the insurer by October 25, 2011.  With this second limited waiver and extension, the same policyholder now has until January 23, 2012, to send the proof of loss.

---

[1](Standard Flood Insurance Policy)

[2](National Flood Insurance Program)

4

Regardless of whether the Court should consider defendant's evidence about proof of loss deadlines, the Court does not have sufficient evidence upon which to decide whether plaintiffs submitted a timely proof of loss.  Defendant's evidence merely demonstrates that the claim deadline was extended a second time, and the Court cannot dismiss plaintiffs' claims based on the unsupported implication that this second extension determined the final deadline.  Indeed, the FEMA memo is dated November 22, 2011 - two months prior to the January 23, 2012 deadline it discussed - so the memo alone cannot demonstrate that January 23, 2012, was the final deadline for submission of proof of loss.  Accordingly, Count I will not be dismissed.

**Count II - Breach of Contract - Failure to Submit to Appraisal**

Defendant argues that Count II should be dismissed for the same reason as Count I. Alternatively, defendant submits that Count II should be dismissed because the dispute was about scope of coverage rather than the cost of any covered items, and thus appraisal was not available under the policy.

Defendant contends that the opportunity to demand an appraisal is solely intended to settle disagreements about the actual cash value or replacement cost of damaged property, not to settle disagreements regarding the scope of coverage.  Plaintiffs respond that they demanded appraisal because the parties did not agree on the amount to be paid, including disagreement regarding the amount owed for items that plaintiffs and defendant agreed were covered under the flood policy.  As the Court must accept plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiffs at this stage of the litigation, Count II will not be dismissed.

**Counts III - V**

Count III alleges negligent misrepresentation.  Count IV alleges breach of the implied covenant of good faith and fair dealing by knowingly, intentionally, recklessly, and negligently acting in a manner indicative of dishonest, interested and/or sinister motive in its consideration of plaintiff's insurance claim.  Count V states a claim under Connecticut General Statutes Section 42-110g, a Connecticut state law that allows a private cause of action for violations of two other Connecticut state law provisions: Conn. Gen. Stat. § 42-110b and Conn. Gen. Stat. § 38a-815 (both dealing with unfair trade practices).  Defendant argues that all three of these counts constitute extra-contractual claims that are expressly preempted by federal law and barred by the SFIP itself, as well as by governing federal law.  Alternatively, defendant contends that SFIP insureds are barred from relying on misrepresentations by adjusters or insurers.

The Second Circuit has held that "all disputes arising from the handling of any claim under [a NFIP] policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law." Jacobson v. Metropolitan Property & Cas. Ins. Co., 672 F.3d 171, 174 (2d Cir. 2012) (quoting 44 C.F.R. pt. 61, app. A(1)).  However, FEMA's flood insurance regulations include 44 C.F.R. Pt. 62, App. A, Art. III(D)(3), which provides, in relevant part:

> Limitation on Litigation Costs.
>
> a. Following receipt of notice of such litigation, the FEMA Office of the Chief Counsel ("OCC") shall review the information submitted. If the FEMA OCC finds that the litigation is grounded in actions by the Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence, then the FEMA OCC shall make a recommendation to the Federal Insurance Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement.

b. In the event the Federal Insurance Administrator agrees with the determination of the FEMA OCC under Article III, Section D.3.a then the Company will be notified in writing within thirty (30) days of the Federal Insurance Administrator's decision that any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a reimbursable loss cost, expense or expense reimbursement.

Accordingly, the flood insurance regulations issued by FEMA contemplate the possibility of negligence and/or other litigation actions against insurance companies that fall significantly outside the scope of the Standard Flood Insurance Policy Arrangement.  Contemplation of common law negligence actions would be superfluous if FEMA itself prohibited such actions, and "[w]hen interpreting a statute, [the Court] is required to give effect, if possible, to every clause and word of a statute, and to avoid statutory interpretations that render provisions superfluous." U.S. v. Kozeny, 541 F.3d 166, 174 (2d Cir. 2008).

Defendant argues that plaintiffs' extra-contractual state law claims violate the Appropriations Clause of the United States Constitution, which bars the judiciary from awarding any monetary claim against the federal government that is not authorized by statute.  See Office of Personnel Management v. Richmond, 496 U.S. 414, 424 (1990).  Nevertheless, where litigation is grounded in actions by the Company that are significantly outside the scope of the Standard Flood Insurance Policy Arrangement, and/or involves issues of agent negligence, the public treasury may not reimburse the insurance company.  44 C.F.R. Pt. 62, App. A, Art. III(D)(3) (see regulations on page 6 above).

Defendant contends that an insured may not rely on any statements made by adjusters or insurance companies as a basis for the insured's failure to comply with policy requirements.  See Jacobson, 672 F.3d at 175 ("Those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.").  This is true because

"[w]here federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." Id.  As discussed above, Counts III - V seek to hold defendant, not the government, accountable for its alleged negligence, bad faith, and unfair trade practices.  Therefore, federal funds may not be implicated.  Moreover, plaintiffs' failure to comply with policy requirements has not been established.  These issues may be resolved at the summary judgment stage.

Finally, defendants argue that Counts III - V should be dismissed for failure to satisfy the pleading requirements of Rule 9(b).

Rule 9(b) requires that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  However, plaintiff has not made allegations of fraud, and the Second Circuit has not adopted the view that Rule 9(b) is applicable to claims of negligent misrepresentation.  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. Of N.Y., 375 F.3d 168, 188 (2d Cir. 2004).  Defendant has not demonstrated that bad faith (Count IV) and/or Connecticut statutory insurance-based claims (Count V) should be held to Rule 9(b)'s particularity standard.  Plaintiff has satisfied Rule 8's short plain statement requirements.  Accordingly, Counts III - V will not be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED.

Dated this 27th day of March, 2014, at Bridgeport, Connecticut.


_____/w/Warren W. Eginton_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE